UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CAMERON KEMP                                  CIVIL ACTION NO. 19-0799

                                              SECTION P
VS.
                                              JUDGE ELIZABETH E. FOOTE

DONALD BELANGER, JR., ET AL.                  MAG. JUDGE KAREN L. HAYES

## REPORT AND RECOMMENDATION

Plaintiff Cameron Kemp, who is pro se, filed the instant proceeding on June 21, 2019, under 42 U.S.C. § 1983.  He names the following defendants: Donald Belanger, Jr., C. Glass Bradley, Agent Albrecht, Agent Holly, Shreveport Police Department, Judge R. Lee Irvin, Ross Owen, Judge Erin Garret, Richard Fischer, unknown animal shelter officer, and Monique Davis.[1] For reasons stated below, the Court should, with the exception of Plaintiff's excessive force claim against Officer Belanger,[2] dismiss Plaintiff's claims.

### Background

Plaintiff maintains that, on December 2, 2016, he and his then-girlfriend, Miranda McGee, were involved in a domestic abuse incident.  [doc. # 12, p. 3].  Six officers came to his residence, saw that he was bleeding, that his hair was pulled out, and that his clothes were ripped, but the officers did not make an arrest.  *Id.*

The next day, at approximately 10:35 a.m., McGee filed a complaint with the Shreveport

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for the excessive force claim.

Police Department, alleging that Plaintiff beat her the previous day.  [doc. # 12-1, p. 8].  At approximately 11:52 a.m., Plaintiff filed a complaint with the Shreveport Police Department, contending that McGee beat him.  [doc. # 12, p. 3].  Plaintiff alleges, "To this day, nothing has been done or even said about my injuries or report."  *Id.*

On December 5, 2016, McGee informed "the head of the domestic unit" that she lied and that she attacked Plaintiff.  [doc. # 1-2, p. 3].  McGee repeated her version of events on two additional occasions.  *Id.*  Plaintiff maintains that, when he searched later, he did not find a warrant for his arrest "in the Caddo Courts databases for domestic violence abuse for 12-9-2016 or 6-21-2018."  *Id.*

Plaintiff alleges that, on June 21, 2018, at 6:30 a.m., Officers Bradley, Albrecht, Holley, and Belanger ("the arresting officers") arrived at his residence and informed him that they possessed a fugitive warrant for his arrest for an alleged domestic abuse incident in 2016.  [doc. #s 1, p. 2; 12, p. 1].  Plaintiff "walked outside to the street where the officers were and surrendered [himself] to them."  *Id.*

Plaintiff claims that, after he surrendered, Officer Belanger "used excessive force."  [doc. # 8, p. 3].  Plaintiff alleges: Belanger "grabbed violently by my neck, he used his feet to sweep me off of my feet while slamming me into the concrete violently damaging my arm, ribs and my back. [sic]."  [doc. # 12, p. 2].  Plaintiff had already surrendered, he was already in handcuffs, he never resisted arrest or attempted to evade arrest, he did not possess a weapon, and he posed no threat.  *Id.*

Plaintiff also claims that, on June 21, 2018, Officer Bradley lied in his report when he swore that he located a bag of marijuana at Plaintiff's residence, when he stated that he saw a jar of marijuana in plain sight at Plaintiff's residence, and when he stated that he heard Plaintiff

2

running through his house.[3]  [doc. #s 1, p. 3; 12, p. 4].  Plaintiff claims that the officers then searched his residence without a search warrant.  [doc. # 1, pp. 2-3].  Officers charged Plaintiff with possessing and intending to distribute a bag of marijuana that they located in his neighbor's yard.  *Id.* at 3.  They also charged him with possessing and intending to distribute marijuana that they allegedly planted in his residence.  *Id.*

Plaintiff claims that, following his arrest, Officer Bradley lied in a "police report," indicating that he had a valid warrant to arrest Plaintiff.[4]  *Id.* at 3.

As mentioned, Plaintiff did not discover an arrest warrant after he submitted requests for records.  [doc. # 1, p. 2].  He claims that the arrest warrant that the officers presented was fabricated and forged.[5]  *Id.*  He claims that his arrest was retaliatory because, in 2012, he reported the arresting officers—who Plaintiff refers to as the "Jump Out Boys"—to the ACLU after they beat him in February 2012.  [doc. #s 1, p. 2; 3, p. 6].

Following his June 21, 2018 arrest, Plaintiff was charged with domestic abuse battery in the Shreveport City Court and with possession with the intent to distribute a schedule 1 CDS in Shreveport District Court.  [doc. #s 12, p. 4; 12-1, p. 21].

On August 19, 2019, Monique Davis, a city prosecutor dismissed the domestic abuse battery charge.  [doc. # 12-1, p. 3].  Plaintiff claims, however, that before she dismissed the charge, she denied him public records, produced "a stack of papers without a bill of information" or grand jury indictment, produced the fabricated arrest warrant, and produced a picture of a woman (the alleged victim) who Plaintiff had never seen before.  [doc. #s 1, p. 5; 12, p. 3].

---

[3] Plaintiff attaches the arrest report and narrative supplement.  [doc. # 12-1, pp. 18-19].

[4] Plaintiff attaches the arrest report and narrative supplements.  [doc. # 12-1, pp. 10, 18-19].

[5] Plaintiff attaches the alleged fabricated warrant.  [doc. # 12-1, p. 5].

Plaintiff claims that District Attorney Ross Owen suppressed exculpatory police reports, suppressed the fabricated warrant, threatened to imprison him for life, produced an "altered false document from 2008 that he knew wasn't the warrant [Plaintiff] was arrested on," and moved to revoke Plaintiff's bond "to keep the truth from coming out."  [doc. #s 1, p. 5; 7, p. 1].

Plaintiff claims that "the Judge and the DA in the courts . . . broke the law" because the "warrant is full of lies," fabricated, and "very illegal."  *Id.*

Plaintiff claims that Judge R. Lee Irvin, a Shreveport City Court judge, signed an illegal warrant.  *Id.* at 6.

Plaintiff claims that "prosecutors and agents who broke the law are all working together breaking many laws."  [doc. # 3, p. 6].  He adds, "They are all working together in a ring of corruption."  *Id.*

Plaintiff's charge, possession with the intent to distribute a schedule 1 CDS, arising out of his June 21, 2018 arrest, remains pending.  [doc. #s 12, p. 4; 12-1, p. 21].

In his fourth amended pleading, Plaintiff claims that, on April 3, 2019, Officer Belanger lied in an affidavit he submitted to obtain a warrant to search Plaintiff's residence.  [doc. #s 12, p. 1; 12-1, p. 25].

Plaintiff alleges that, on April 4, 2019, an unidentified "officer for the animal shelter" lured him out of his house and to the street so that other officers—the "Jump Out Boys Unit"— could arrest him.  [doc. # 12, p. 1].  Plaintiff claims that luring him to the street was an "illegal procedure."  Plaintiff was charged with possession with intent to distribute a schedule 1 CDS and possession of a schedule IV CDS.  [doc. #s 12, p. 4; 12-1, p. 28].

Plaintiff claims that Officer Belanger lied when he stated that Plaintiff informed him that the drugs were for Plaintiff's personal use, when he testified that Plaintiff said the "judge was

going to jail for signing this warrant," and when he testified that he possessed a warrant to arrest Plaintiff on June 21, 2018.  [doc. # 13, p. 1].  Plaintiff characterizes Belanger's acts as retaliation for filing this civil suit.  *Id.*

Plaintiff claims that, because he filed this suit against Judge Erin Garret, Garret retaliated and revoked his bond.  *Id.*  Plaintiff also claims that Judge Garret threatened him, instructing him not to discuss his civil allegations during the trial.  *Id.* at 2.  Plaintiff claims further that Judge Garret knew that the prosecutor and police violated his constitutional rights, but the judge failed to act because she is "trying to cover up the crimes . . . ."  *Id.*  He also claims that Judge Garret failed to empanel a new jury after one juror "had a loud outburst of frustration and anger."  *Id.* at 3.

Plaintiff claims that, at the trial on the charge stemming from his April 4, 2019 arrest, the prosecutor, Ross Owen, submitted a forged document which stated that Plaintiff was "busted with $3000 with drugs . . . [sic]."  *Id.* at 1.

Plaintiff claims that, at the same trial, his public defender, Richard Fischer, refused to argue that the arresting officers lacked a "warrant in the June 21, 2018 incident . . . ."  *Id.* at 2.  Fischer also refused to call Plaintiff's proposed witness.  *Id.*  According to Plaintiff, Fischer is "guilty of working with the prosecution from day one."  *Id.*

A jury found Plaintiff guilty of the charge(s) stemming from the April 4, 2019 arrest.  *Id.* at 3.

Plaintiff seeks declaratory relief, punitive damages, and compensation for his lost wages, future lost wages, emotional pain and stress, injured reputation, and bail payments.  [doc. # 1, pp. 1, 7].

## Law and Analysis

**1. Preliminary Screening**

Because Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under § 1915(e)(2).  Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint.  In making this determination, the court must assume that all of the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted).  Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions."  *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Failure to Investigate Accusations Underlying Plaintiff's June 21, 2018 Arrest**

Plaintiff alleges, "To this day, nothing has been done or even said about my injuries or report." [doc. # 12, p. 3]. He is referencing the report he submitted in December 2016 to the Shreveport Police Department, in which he maintained that his girlfriend, McGee, beat him. [doc. # 12, p. 3].

First, it is not clear whether Plaintiff seeks relief for this allegation. To the extent he does, he fails to identify a responsible defendant. Even assuming he identified a responsible defendant, there is no freestanding right to be free from a negligent or reckless investigation. *Hernandez v. Terrones*, 397 F. App'x 954, 966 (5th Cir. 2010). Likewise, there is no freestanding claim that officers ignored exculpatory evidence. *Id.* Rather, these allegations simply color a false-arrest/malicious-prosecution claim. *Id.* ("We did not hold that the negligent investigation and ignoring of exculpatory evidence in *Sanders* were freestanding constitutional violations, rather, they were conduct supporting Sanders' claims for false arrest and illegal detention.").

To the extent Plaintiff seeks to raise a "freestanding" claim, the Court should deny the claim. The undersigned will, however, analyze the allegation above as part of Plaintiff's overall false-arrest/malicious-prosecution narrative.

**3. *Heck v. Humphrey* and *Wallace v. Kato* Concerning Plaintiff's June 21, 2018 Arrest**

Plaintiff claims that, on June 21, 2018, Officer Bradley lied in his report when he swore that he located a bag of marijuana at Plaintiff's residence, when he stated that he saw a jar of marijuana in plain sight at Plaintiff's residence, and when he stated that he heard Plaintiff running through his house. [doc. #s 1, p. 3; 12, p. 4]. Plaintiff claims that the officers searched

his residence without a warrant.  [doc. # 1, pp. 2-3].   He suggests that the officers acted in retaliation following the 2012 ACLU complaint he filed against them.

Plaintiff was, thereafter, charged with possession with the intent to distribute a schedule 1 CDS, and the charge remains pending.  [doc. #s 12, p. 4; 12-1, p. 21].

If Plaintiff is convicted of the pending charge, he may not be entitled to seek relief for false arrest, for an unconstitutional search, or for a retaliatory arrest until the conviction is reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.  See *Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus).

While the rule in *Heck* does not extend to pending criminal matters, successful Section 1983 claims, under Plaintiff's allegations, could necessarily imply the invalidity of any future conviction for possession or possession with intent to distribute.[6]  See *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

Prevailing on the claim that the officer lied in the arrest report could necessarily imply the invalidity of Plaintiff's conviction.  In *Shaw v. Harris*, 116 F. App'x 499, 500 (5th Cir. 2004), the Fifth Circuit held that *Heck* barred a plaintiff's claims of evidence tampering, concealment, and perjury because a decision granting the claims "would necessarily imply that

---

[6] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim.  *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

her conviction was invalid."  In *Lenoir v. Howard*, 579 F. App'x 227, 228 (5th Cir. 2012), the

Fifth Circuit held that the plaintiff's "claim that he was wrongly convicted based on

constitutional violations at trial, namely the use of perjured testimony, necessarily implies that

his conviction was invalid."[7]

      Prevailing on the false arrest claim could necessarily imply the invalidity of a conviction

because "false arrest . . . claims challenge the existence of probable cause and, thus, by their

essence are collateral attacks on a criminal judgment's validity."  *Thomas v. Pohlmann*, 681 F.

App'x 401, 406 (5th Cir. 2017) (citing *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed.

App'x. 578, 583 (5th Cir. 2012)); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The

plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest

[for the crime he was convicted of], would demonstrate the invalidity of [the conviction].").[8]

      Plaintiff's unlawful search claim is likewise predicated on the absence of probable cause

and, therefore, would constitute a collateral attack on any future conviction founded on evidence

---

[7] See *Gonzalez v. Garza*, 59 F.3d 1241 (5th Cir. 1995) (holding that claims that evidence was
manipulated or withheld to corroborate perjured testimony "would be foreclosed by *Heck*.");
*Heath v. Thomas*, 34 F. App'x 962 (5th Cir. 2002) (finding a claim of withholding evidence
barred by *Heck*.); *Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994) (finding a claim of
withholding exculpatory evidence barred by *Heck* because, if proved, it would "call [the
plaintiff's] conviction into question under *Brady v. Maryland*, 373 U.S. 83, 83 (1963).").

[8] See also *Queen v. Purser*, 109 Fed. App'x. 659 (5th Cir. 2004) (a former inmate's false arrest
claim necessarily challenged whether the evidence, which an officer seized following an
allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his
arrest; thus, the claim was not cognizable absent a showing that the conviction had been
invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that
there was no probable cause for the challenged entry, search, seizure, and arrest would call into
question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled
substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*);
*Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

derived from the searches.[9]  See *Hall v. Lorenz*, 48 F. App'x 481 (5th Cir. 2002) ("Hall's claims regarding his allegedly illegal arrest and illegal search and seizure, if successful, would undermine the validity of his felony drug conviction."); *Kato*, 549 U.S. at n.5 ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .").

Further, Plaintiff's retaliatory-arrest claim could necessarily imply the invalidity of a conviction because a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019).

Federal courts may stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes.  See *Kato*, 549 U.S. at 393-94 ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended.") (emphasis supplied).

Here, Plaintiff's claims are *related to* rulings that will likely be made concerning his pending charge.  Accordingly, the Court should stay the claims pending the outcome of the ongoing criminal prosecution.

---

[9] While "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial . . . [b]ecause of doctrines like independent source[,] inevitable discovery, and [] harmless error," Plaintiff's allegations do not suggest that any of these doctrines would, following a finding by this Court that the officers lacked probable cause, validate Plaintiff's conviction.  See *Heck*, 512 U.S. at n.7 (alterations to original and cited sources omitted); see also *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996) ("If proved, however, [the plaintiff's] false arrest claim necessarily would call into question his conviction as a felon in possession of a firearm. Specifically, if the arresting officers lacked probable cause to arrest Hudson for burglary and the arrest is invalid, the firearm discovered in Hudson's possession as a result of the arrest would be subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest. Moreover, it is improbable that doctrines such as independent source, inevitable discovery and harmless error would permit the introduction of the firearm as evidence in this case . . . .").

**4. Lying in an Arrest Report Relative to Plaintiff's June 21, 2018 Arrest**

Plaintiff ostensibly claims that, following his June 21, 2018 arrest, Officer Bradley lied in a "police report," indicating that he had a valid warrant to arrest Plaintiff.[10]  *Id.* at 3.  This allegation does not amount to a constitutional violation.  See *Barber v. Quarterman*, 437 F. App'x 302, 304 (5th Cir. 2011) (concluding, where the plaintiff alleged that "officials falsified a report in violation of his right to due process and that others conspired with them to falsify the report[,]" that the allegations did "not state a claim under § 1983 because [the plaintiff] identified no constitutional violation."); see *LeBlanc v. Louisiana State Penitentiary*, 2015 WL 5011984, at *4 (M.D. La. July 28, 2015), report and recommendation adopted, 2015 WL 5025242 (M.D. La. Aug. 24, 2015); *Ryals v. El Paso Cty.*, 2015 WL 3540951, at *10 (W.D. Tex. June 3, 2015). Accordingly, the Court should dismiss this claim.  The undersigned will, however, consider this allegation as part of Plaintiff's larger false-arrest/malicious-prosecution narrative.

**5. Malicious Prosecution Relative to Plaintiff's June 21, 2018 Arrest**

Plaintiff raises a host of related claims against the arresting officers.  Plaintiff's claims are difficult to decipher.  It appears that he first claims that, on June 21, 2018, officers arrested him under a fabricated or forged *fugitive* warrant.  [doc. # 1, p. 2].  This fugitive warrant, according to Plaintiff, did not and does not exist; he searched various records and did not locate a fugitive warrant.  *Id.* at 2, 5.

He attaches a purported docket sheet from the Caddo Parish Clerk of Court, which indicates that, on August 14, 2008, the state court issued a bench warrant for his arrest because he did not appear in court for sentencing in connection with a conviction unrelated to the charges mentioned above.  [doc. # 7-1, p. 1].  Plaintiff claims that this is the warrant the officers claimed

---

[10] Plaintiff attaches the arrest report and narrative supplements.  [doc. # 12-1, pp. 10, 18-19].

to possess on June 21, 2018, but the claimed warrant must have been fabricated or forged because (1) when the fugitive/bench warrant purportedly issued for failure to appear at sentencing, Plaintiff had already completed probation for the conviction and (2) the fugitive/bench warrant is not in any records.  [doc. # 7, p. 1].

Plaintiff's attachments, however, indicate that on June 21, 2018, the officers did not arrest him for failing to appear at sentencing; rather, they arrested him under a separate warrant for domestic abuse battery.  [doc. # 12-1, p. 5].  Plaintiff does allege that Officer Bradley informed him that he was arresting Plaintiff under a fugitive warrant, but Plaintiff also alleges that he was "booked on a fugitive warrant for *domestic violence abuse*."  *Id.* (emphasis added). Plaintiff also alleges that there "is no warrant for [his] arrest in the Caddo Courts' databases for *domestic violence abuse* . . . ."  *Id.* (emphasis added).  In other words, Plaintiff conflates his allegations and reverts from alleging that he was arrested under the alleged 2008, non-existent fugitive/bench warrant to alleging that he was arrested for domestic abuse battery in 2016.

Plaintiff appears to rely in part on a newspaper clipping from The Inquisitor, in which The Inquisitor reported that he was arrested "on a fugitive warrant."  [doc. #s 7, p. 2; 7-1, p. 5]. The booking report to which he attaches the newspaper clipping, however, definitively reveals that he was arrested for domestic abuse battery.  [doc. # 7-1, p. 5].  And, as above, even Plaintiff concedes (at times) that he was arrested for domestic abuse battery rather than for failing to appear at a sentencing.  [doc. #s 3, p. 6; 12, p. 3-4].

Plaintiff's conflation aside, and to the extent he does claim that the arresting officers possessed only a fabricated bench/fugitive warrant, he fails to state a plausible claim because the officers were warranted to arrest Plaintiff for *domestic abuse battery*, and Plaintiff does not allege that the arresting officers lacked reliable knowledge of the arrest warrant for domestic

abuse battery.  "[T]here is no requirement that an officer possess the actual warrant; an arrest is

legal if the officer acts under the authority of a warrant of which he or she has reliable

knowledge." *Barnes v. Madison*, 79 F. App'x 691, 703 (5th Cir. 2003).  Moreover, an arrest is

"proper even though the arresting officer did not have the actual written warrant in hand."  *Gill v.*

*United States*, 421 F.2d 1353, 1355 (5th Cir. 1970); *Bartlett v. United States*, 232 F.2d 135, 138

(5th Cir. 1956); *Bradley v. Extradition Corp. of Am.*, 758 F. Supp. 1153, 1156 (W.D. La. 1991)

("An arrestee need not be presented with a copy of the arrest warrant.").

Next, in what appears to be the gravamen of Plaintiff's complaint, he claims that

someone—or a group of persons—forged or fabricated a warrant for his arrest for domestic

abuse battery.  Plaintiff suggests that Judge R. Lee Irvin conspired with others to fabricate the

arrest warrant for domestic abuse battery, [doc. #s 1, p. 5; 3, p. 6; 12-1, p. 5], "after the fact" to

"cover up the crime."  [doc. # 3, p. 6].  This claim, however, is implausible for several reasons.

First, the arrest warrant for domestic abuse battery, which Judge R. Lee Irvin signed and

which Plaintiff attaches to his pleading, is dated December 9, 2016.  Officers arrested Plaintiff

much later on June 21, 2018.  Second, Plaintiff does not allege that Judge Irvin fabricated the

warrant "after the fact," rather, he alleges, without identifying the actors, "they" are trying to

"*submit*" the warrant "after the fact."  [doc. # 3, p. 6].  In some respects, it appears that, rather

than claiming that the arrest warrant was fabricated post-arrest, Plaintiff is claiming that "they"

produced the warrant too late in his criminal proceeding.[11]  Third, Officer Haygood, a non-party,

applied for the arrest warrant on December 3, 2016, and Plaintiff neither alleges that Haygood

---

[11] For instance, Plaintiff also alleges that a prosecutor submitted discovery "150 days after the
incident occurred" to "thwart" Plaintiff's civil proceeding.  [doc. # 1, p. 5].

conspired to fabricate the warrant nor seeks relief from Haygood in this proceeding.[12]  [doc. #

12-1, p. 4].  In other words, the arresting officers and prosecutors were not, under Plaintiff's

allegations, involved in applying for the warrant.  Finally, Plaintiff bases his contention that the

warrant was fabricated in part on his inability to locate the warrant in any records.  [doc. #s 1, pp.

5-6; 3, p. 6].  Stripped of this non sequitur—that the warrant did not exist because he could not

locate it—Plaintiff's claim that the warrant "was done after the incident" is conclusory.  [See

doc. # 1, p. 5].  Plaintiff does not plausibly allege, for instance, that Judge Irvin post-dated the

warrant, that Judge Irvin did not actually sign the warrant,[13] or that Judge Irvin dated the warrant

before the arrest but signed the warrant following the arrest.

Next, as referenced above, Plaintiff contorts his allegations and alleges that "a request

was sent to the prosecutor to get a warrant for [his] arrest and the request is still pending . . .

meaning the prosecutor never approved or gave the officer the warrant for [his] arrest."  [doc. #

1, p. 3].  As noted, however, Plaintiff attaches a warrant for his arrest for domestic abuse battery,

which is signed by a *judge*.  [doc. # 1-2, p. 5].

Plaintiff alters course once more and claims that the warrant signed by Judge R. Lee Irvin

"has no warrant number."  [doc. # 1, p. 5].  Plaintiff, however, does not explain how the absence

of a "warrant number" invalidated this warrant or otherwise caused a violation of his

constitutional rights.

Plaintiff next claims that the warrant for domestic abuse battery is "very illegal" and "full

---

[12] Plaintiff mentions that Haygood "is nowhere to be found," is the officer "they used in the
report," did not respond to a subpoena, and "is not with the SPD."  [doc. # 12, p. 3].  Plaintiff
does not allege, for instance, that Haygood does not exist or that Haygood did not complete the
affidavit in support of the application for an arrest warrant.

[13]  Plaintiff alleges that Judge Irvin "signed this illegal warrant."  [doc. # 1, p. 6].

of lies." This claim is conclusory: Plaintiff does not explain why the warrant is illegal, and he does not identify the lies in the warrant.

The penultimate focus of Plaintiff's allegations (the ultimate being retaliatory arrest) appears to be that the arresting officers lacked probable cause to arrest him and that the prosecutor lacked probable cause to prosecute him. "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."[14] *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009). "[T]he initiating party may be liable for false arrest," however, "if the plaintiff shows that the 'deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Id.* (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)). "But, 'because the intermediary's deliberations protect even officers with malicious intent,' a plaintiff must show that the official's malicious motive led the official to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission."[15] *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017)

---

[14] The 'independent/impartial-intermediary doctrine' does not insulate a defendant from a "*Malley* claim," which the Fifth Circuit describes as a claim that an arrest was "based on a 'warrant application . . . so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Blake v. Lambert*, 921 F.3d 215, 220 (5th Cir. 2019) (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)). Here, however, Plaintiff does not raise a *Malley* claim. Rather, his claim, at best, resembles a "*Franks* claim," which the Fifth Circuit describes as a claim that an official "'swear[s] to false information in an affidavit in support of a search [or arrest] warrant, provided that: (1) the affiant knew the information was false or would have known it was false except for the affiant's reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information.'" *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "A similar standard applies to omitting exculpatory information." *Id.*

[15] Here, Plaintiff's claims are "more like the tort of malicious prosecution" because Plaintiff was "arrested through the wrongful institution of legal process: an arrest pursuant to a warrant, issued through the normal legal process, that is alleged to contain numerous material omissions and misstatements." *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018). That said, the Fifth

(quoting *Buehler v. City of Austin/Austin Police Dep't.*, 824 F.3d 548, 555 (5th Cir. 2016)).

Here, Plaintiff seems to ground his claims on his allegation that his girlfriend, Miranda McGee, recanted her accusation of domestic abuse battery.  Plaintiff attaches a letter, signed by McGee, in which she recounted that, on December 5, 2016, she "spoke with the head of the Domestic unit . . . and told him [she] lied" and that she actually attacked Plaintiff.  [doc. # 1-2, p. 3].  She spoke with the same individual the "following Thursday and then again the following Wednesday after that."  *Id.*

As above, Officer Haygood applied for the arrest warrant for domestic abuse battery.  [doc. # 12-1, p. 4].  In that respect, Plaintiff does not name Haygood as a defendant or otherwise seek relief from Haygood.  More important, defendants cannot be vicariously liable for Haygood's actions even assuming Plaintiff assigned fault to Haygood.[16]  Further, even assuming Plaintiff named Haygood as a defendant, Plaintiff does not allege that Haygood withheld material information or otherwise knowingly misdirected the judge in his notarized "Affidavit for Arrest Warrant."  See *Buehler*, 824 F.3d at 555.  In fact, Haygood applied for the warrant on December 3, 2016, [doc. # 12-1, p. 4], and McGee recanted her accusations on December 5,

---

Circuit has also concluded that no "freestanding constitutional right to be free from malicious prosecution exists."  *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).  Regardless, Plaintiff's claims are, like false arrest claims, predicated on the absence of probable cause.  See *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) ("Common-law malicious prosecution requires showing, in part, that a defendant instigated a criminal proceeding with improper purpose and without probable cause."); *Nieves*, 139 S. Ct. at 1726.  Moreover, the Fifth Circuit recently applied the independent-intermediary doctrine to a malicious prosecution claim.  *Curtis*, 761 F. App'x at 304 (agreeing that the impartial intermediary doctrine absolved the appellees of liability from the plaintiff's claim that he was arrested *and prosecuted* without probable cause).

[16] See *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005) (declining to extend liability "beyond the affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application."); *Shaw v. Villanueva*, 918 F.3d 414, 418 (5th Cir. 2019) (finding it irrelevant that a third party "doctored the complaint affidavit"); *Adaway v. City of Jasper, Texas*, 2017 WL 5641535, at *9 (E.D. Tex. Apr. 28, 2017).

2016, [doc. # 1-2, p. 3].  In addition, McGee did not speak to Haygood; rather she spoke to the

"head of the domestic unit . . . ."  [doc. # 1-2, p. 3].[17]  Plaintiff does not allege that Haygood was

aware of McGee's recantations.[18]

Further, Plaintiff does not allege that the arresting officers or the prosecutor were

involved in applying for the arrest warrant.

Accordingly, Judge Irvin's signed warrant breaks the chain of causation for false

arrest/malicious prosecution and insulates the arresting officers and the prosecutor from liability.

The Court should dismiss these claims.

**6. Retaliatory Arrest Relative to Plaintiff's June 21, 2018 Arrest**

Plaintiff claims that the officers arrested him for domestic abuse battery on June 21,

2018, because, in February 2012, he filed a complaint against them before the ACLU, alleging

that they beat him.  [doc. #s 1, pp. 2-3; 3, p. 6].  Plaintiff adds, "The incident that I reported to

the ACLU was dismissed in the courts."  [doc. # 12, p. 5].

A retaliatory prosecution is actionable only if a plaintiff can also prove the common-law

elements of malicious prosecution, including the absence of probable cause.  *Curtis v. Sowell*,

761 F. App'x 302, 305 (5th Cir. 2019).  In *Curtis*, the court found that, because a judge and grand

---

[17] In *Shaw,* 918 F.3d at 418, the court held that two defendants, who were not the plaintiff's
accusers and who did not submit the subsequent probable-cause affidavit, were insulated from
liability under the independent-intermediary doctrine because the plaintiff did not allege that they
knew the accuser lied or that they knew their subordinates who prepared the probable-cause
affidavit knew the accuser lied.

[18] To the extent Plaintiff claims that Haygood was negligent in failing to either investigate
McGee's accusations or discover Plaintiff's accusations against McGee before applying for a
warrant, "[t]he defendant taints the magistrate's deliberations only when he has engaged in
misconduct that exceeds mere negligence."  *Dubrul v. Rains Cty., Texas*, 176 F.3d 480 (5th Cir.
1999) (citing *Sanders v. English,* 950 F.2d 1152, 1159-60 (5th Cir. 1992)); *Kugle v. Shields*, 62
F.3d 395 (5th Cir. 1995) ("[N]egligent conduct leading up to the issuance of a warrant or grand
jury indictment is not actionable.").

jury found probable cause, the district court did not err in dismissing the plaintiff's retaliation claim.  *Id.*

Likewise, the United States Supreme Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause[.]"  *Reichle v. Howards*, 566 U.S. 658, 664-65 (2012).  "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."  *Nieves*, 139 S. Ct. at 1724.  Under either a false-arrest/imprisonment or malicious-prosecution theory, the "presence of probable cause should generally defeat a First Amendment retaliatory arrest claim."  *Id.* at 1726.

 Here, as above, Judge Irvin found probable cause to arrest Plaintiff for domestic abuse battery, and Plaintiff does not allege that the finding was tainted.  Accordingly, the Court should dismiss this claim.  See *id.*

**7.  Judge R. Lee Irvin**

Plaintiff faults Judge R. Lee Irvin for signing an "illegal warrant."  [doc. # 1, p. 6].  Plaintiff adds, "District attorneys, Judge R. Lee Irvin, and the Officers of the Shreveport Police Department [are] all working together on one accord violating my civil rights and also committing criminal acts."  [doc. # 7, p. 1].

This claim is entirely conclusory.  Moreover, Judge Irvin is immune.

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages."  *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005).  It "applies even when the judge is accused of acting maliciously and corruptly . . . ."  *Pierson v. Ray*, 386 U.S. 547, 554 (1967).  It "extends to all judicial acts which are not performed in the clear absence of all jurisdiction."  *Kemp ex rel. Kemp v. Perkins*, 324 Fed. App'x. 409, 411 (5th Cir. 2009) (citing *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)).  There are only two exceptions: (1) non-judicial

actions, i.e., actions not taken in the judge's judicial capacity; and (2) lawsuits challenging actions taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

"In determining whether an action is judicial, a court looks to the nature of the act itself; that is, whether the challenged act is a function normally performed by a judge." *Id.* Courts consider four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard*, 413 F.3d at 515. "These factors are broadly construed in favor of immunity." *Id.* "Immunity may be applied even if one or more of these factors is not met." *Morrison v. Walker*, 704 F. App'x 369, 373 (5th Cir. 2017).

Signing an arrest warrant is an act normally performed by a judge. *Barnes*, 79 F. App'x at 701; *Hey v. Irving*, 161 F.3d 7 (5th Cir. 1998).[19] Moreover, Plaintiff does not allege that Judge Irvin acted outside of the courtroom or chambers. Likewise, Plaintiff's claim clearly "centers around" a prior proceeding before Judge Irvin, and nothing indicates that the alleged acts arose outside of a visit to Judge Irvin in his official capacity.[20] Moreover, Plaintiff does not allege that Judge Irvin acted in the absence of all jurisdiction.

---

[19] See also *Diaz v. Tocci*, 2016 WL 3365494, at *6 (W.D. Tex. June 16, 2016) ("[T]he fact plaintiff disagrees with the rulings made by his state trial court judges does not, standing alone, establish those rulings were taken in a complete absence of all jurisdiction or that those judges were acting outside the scope of their official judicial duties when they made the rulings adverse to plaintiff.").

[20] See *Morrison*, 704 F. App'x at 374 (finding judicial immunity even where the plaintiff failed to offer any allegations relating to three of the four *Ballard* factors).

"The fact that it is alleged that the judge acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).  "It is a well established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity."  *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985).

Accordingly, Judge Irvin is entitled to absolute judicial immunity, and the Court should dismiss the claims against him.[21]

### 8. Assistant District Attorney Ross Owen and Prosecutor Monique Davis

Plaintiff claims that Assistant District Attorney Ross Owen withheld exculpatory evidence, answered Plaintiff's request for evidence with an "altered false document," introduced a "forged document dated January 14, 2014" at trial which stated that Plaintiff was "busted with $3,000 and drugs in violation of" Plaintiff's probation, threatened to seek a life sentence for Plaintiff's possession-with-the-intent-to-distribute-a-schedule-1-CDS charge, and moved to revoke his bond to ensure that Plaintiff could not litigate the instant civil proceeding.  [doc. #s 1, p. 5; 7, p. 1; 13, p. 1].  Plaintiff also claims that Prosecutor Monique Davis withheld material evidence, initiated prosecution based on "false accusations," and produced a photograph of a woman he had never seen before.  [doc. #s 1, p. 5; 12, p. 3].

"Criminal prosecutors . . . enjoy absolute immunity from claims for damages asserted under [42 U.S.C.] § 1983 for actions taken in the presentation of the state's case."  *Watson v. Walton*, 68 F.3d 465 (5th Cir. 1995).  "[A]cts undertaken by a prosecutor in preparing for the

---

[21] Plaintiff seeks "declatory reliefs," but he does not specify which defendant he seeks this relief from, and he does not specify what he wants the Court to declare.

initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (holding that a prosecutor's conduct in connection with preparing and filing charging documents was protected by absolute immunity).

"Absolute immunity is not a rigid, formal doctrine, but attaches to the functions a prosecutor performs."  *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018).  The Fifth Circuit has consistently held that the decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity.  See *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009); *Workman v. Calogero*, 174 Fed. App'x. 824, 826 (5th Cir. 2006).  Absolute immunity shields prosecutors even when they act maliciously, wantonly, or negligently.  *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016).

Here, Defendant Owen is absolutely immune from Plaintiff's claim that he threatened Plaintiff with a life sentence.  For instance, in  *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984), where the "defendants allegedly used their prosecutorial powers to threaten [the plaintiff] into dismissing his damages suit[,]" the court reasoned that, while such "a motivation would be reprehensible and such threats abhorrent, . . . they do not lift the decision to maintain a criminal prosecution from the prosecutorial activities protected by *Imbler.*"  See also *Taylor v. Kavanagh,* 640 F.2d 450, 453 (2d Cir. 1981) (a prosecutor's activities in plea bargaining are an essential component of the criminal justice system and merit the protection of absolute immunity) (cited with approval by *Tubwell v. Dunn*, 12 F.3d 1097 (5th Cir. 1993)); *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979) (finding, where the plaintiff alleged that prosecutors threatened him with further prosecution, that the prosecutors were immune).

22

Defendant Owen is absolutely immune from Plaintiff's claim that he produced an "altered false document"[22] and another "forged document dated January 14, 2014," which stated that Plaintiff was "busted with $3,000 and drugs in violation of" his probation.  Defendant Davis is likewise immune from Plaintiff's claim that she produced a photograph of a woman Plaintiff had never seen before.  See *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (absolute immunity protected prosecutor from suit even for knowingly using perjured testimony and suppressing material evidence at plaintiff's murder trial); *Hargrove v. Welborn-Hawkins*, 669 F. App'x 779 (5th Cir. 2016) (finding prosecutors immune where the plaintiff alleged "no facts in support of his claim that the prosecutors fabricated evidence that was used against him.").

Defendants Owen and Davis are absolutely immune from Plaintiff's claim that they withheld material evidence.  The Fifth Circuit has "specifically held that the suppression of exculpatory evidence . . . is shielded by absolute immunity."  *Truvia v. Julien*, 187 F. App'x 346, 348 (5th Cir. 2006).

Defendant Owen is immune from Plaintiff's claim that he moved to revoke Plaintiff's bond to ensure that Plaintiff remained incarcerated and could not litigate this proceeding.  [doc. # 7, p. 1].  In *Manuel v. Lehmberg*, 690 F. App'x 245, 246 (5th Cir. 2017), the court held that the prosecutor was immune from the plaintiff's allegation that prosecutor "set an excessively high

---

[22] Plaintiff is referencing an alleged fabricated fugitive warrant.  [doc. # 7, p. 1].  Plaintiff does not allege that Owen actually fabricated or falsified the document; instead, he claims that Owen *submitted* the false document in response to Plaintiff's attorney's request for exculpatory evidence.  *Id.*  Even if Plaintiff alleged that Owen fabricated the document, Owen would remain immune because he acted after Judge Irvin signed Plaintiff's arrest warrant and well into the prosecution.  In other words, Owen did not act as an investigator, he acted as an advocate.  In *Van Buren v. Cave*, 236 F. App'x 894, 897 (5th Cir. 2007), the court opined that prosecutorial immunity protects a prosecutor who fabricates false evidence while engaging in—as opposed to preparing for—the initiation of  prosecution or the presentation of the state's case.  The relevant question is whether the prosecutor acted "as an investigator or a prosecutor when she engaged in this conduct."  *Id.* at 898.

bond to ensure" that the plaintiff remained in prison.   See *Slavin v. Curry*, 574 F.2d 1256, 1264 (5th Cir. 1978) (finding a prosecutor immune where the plaintiff alleged that the prosecutor moved to cancel the plaintiff's bond), overruled on other grounds by *Sparks v. Duval Cty. Ranch Co.*, 604 F.2d 976 (5th Cir. 1979); see also *Sosa v. Strain*, 2007 WL 1521441, at *6 (E.D. La. May 22, 2007) ("If plaintiff believed that his bond was improperly revoked or forfeited, his recourse was to challenge the pertinent ruling in the state's appellate courts, not to sue the prosecuting attorney in a federal civil rights action.").

Finally, Davis is immune from Plaintiff's claim that she initiated prosecution based on false accusations.  [doc. # 12, p. 3].  As above, the decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity.  See *Imbler*, 424 U.S. at 430-31.

Under Plaintiff's allegations, Owen and Davis acted only in the course of their roles as governmental advocates.  Accordingly, the Court should dismiss these claims as frivolous and because Plaintiff seeks monetary relief from defendants immune from such relief.[23]

## 9. Conspiracy

Citing 18 U.S.C. § 241, Plaintiff claims that Judge Irvin, Assistant District Attorney Owen, and Prosecutor Monique Davis engaged in a conspiracy.  [doc. # 3, p. 6].  Section 241, however, is a criminal statute and does not provide a basis for civil liability.  *Gill v. State of Texas*, 153 F. App'x 261, 262 (5th Cir. 2005).  "[D]ecisions whether to prosecute or file criminal

---

[23] In addition to reasons discussed below relative to Plaintiff's claims of an overarching conspiracy, Plaintiff's conclusory allegations of conspiracy relative to these prosecutors do not pierce their immunity.  See *Brown*, 519 F. App'x at 238; *Patton v. Bryant*, 584 F. App'x 242, 243 (5th Cir. 2014) (holding that the plaintiff's conclusional allegations of conspiracy did not pierce the prosecutors' or the judge's immunity); *Holloway*, 765 F.2d at 522 (holding that allegations of conspiracy will not void immunity for judicial acts).

charges are generally within the prosecutor's discretion, and, as a private citizen,  [a plaintiff] has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute." *Id.*

Plaintiff also alleges that these defendants conspired to deprive him of his civil rights. [doc. # 1, p. 6].  He alleges that "prosecutors and the agents who broke the law are all working together breaking many laws."  [doc. # 3, p. 6].  "They are all working together in a ring of corruption."  *Id.*  In another pleading, he alleges that "District Attorneys, Judge R. Lee Irvin, and the Officers of the Shreveport Police Department all working together on one accord violating my civil rights and also committing criminal acts. [sic]."  [doc. # 7, p. 1].  In yet another pleading, Plaintiff alleges, "They are all working together in a conspiracy to cover up a crime." [doc. # 12, p. 5].

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'" *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)).  "To plead a conspiracy under Section 1983, a plaintiff must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Shine v. Jones*, 743 F. App'x 566, 568 (5th Cir. 2018).  "Charges as to such conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or inference . . . trifles light as air . . . will suffice[.]" *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

Here, Plaintiff does not allege that that Defendants Owen, Davis, Irvin, Belanger, Bradley, Albrecht, or Holly agreed to commit an illegal act.  Plaintiff does allege that they

worked together "on one accord," but this threadbare allegation does not suffice: "[c]onclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983."  See *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019).  Even to the extent this allegation did plausibly reflect an agreement, Plaintiff does not specify which, of the many alleged illegal acts he references, they agreed to perform.[24]  See *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("[M]ore than a blanket of accusation is necessary to support a § 1983 claim.").  In this respect, Plaintiff fails to plead an essential element of a conspiracy claim.

Moreover, with the exception of Plaintiff's excessive force claim—which he does not allege to be the product of a conspiracy—Plaintiff has not plausibly alleged a deprivation of his constitutional rights.  "No deprivation, no § 1983 conspiracy."  *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019); *Curtis*, 761 F. App'x at 306 ("Because Curtis's federal conspiracy claim cannot stand without an underlying constitutional violation, it fails as well."); *Moore v. Grant*, 79 F. App'x 676, 677 (5th Cir. 2003).  Accordingly, the Court should dismiss these claims.

---

[24] See *Montgomery*, 759 Fed. App'x at 314 ("Montgomery's amended complaint is disorganized and the facts are very loosely tied together. At points in this complaint, Montgomery alleges that the defendants 'act[ed] in concert,' 'agree[d]' to plant contraband, and 'elicited aid' from each other for the purpose of violating his civil rights. Most importantly, although he alleges there was an agreement—an agreement to kill or imprison him—these allegations are largely conclusory without any identification of time, date, or circumstance. . . . It would appear that Montgomery strives to allege an overarching conspiracy by persons associated for the purpose of setting him up for the criminal conduct that has landed him in prison. Yet, . . . there is no alleged common motive . . . among all of the defendants for that matter, except a vague and conclusory assertion that they 'wanted [Montgomery] dead' or imprisoned because he was a threat to Espin. Finally, Montgomery pleads no specific facts regarding the connection between the public officials and private citizens or where or when the criminal conduct occurred. In short, the allegations are incomprehensible for purposes of stating a claim of conspiracy against the defendants to deprive him of any cognizable constitutional rights.").

**10. Defamation**

Plaintiff writes, "I am seeking damages for defamation because I was arrested as a fugitive for Domestic Violence Abuse and it was in the Inquisitor, the local news and online. [sic]."  [doc. #s 1, p. 7; 12, p. 6].  Plaintiff apparently claims that The Inquisitor either falsely reported that he was arrested under a fugitive warrant or falsely indicated that Plaintiff was a fugitive.  [See doc. #s 7, p. 2; 7-1, p. 5].

"[D]amage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by an infringement of some other interest, is actionable under § 1983." *Cormier*, 493 F. App'x at 584 (quoted source omitted).  The Fifth Circuit describes this as the "stigma-plus-infringement" test. *State of Tex. v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "To meet the stigma prong, a plaintiff must show that the stigma was caused by concrete, *false* factual assertions by a state actor." *Id.* (emphasis added).

Here, The Inquisitor is not a state actor, and Plaintiff does not offer any plausible allegations to establish it otherwise acted under color of state law.  See *Lavergne v. Turk*, 583 F. App'x 367, 368 (5th Cir. 2014) (observing that Independent Media group was a private citizen); *Bui Phu Xuan v. Fort Worth Star Telegram*, 277 F. App'x 452, 454 (5th Cir. 2008) (observing that the Star-Telegram, which allegedly published two libelous articles about the appellant, was a private party).

Plaintiff does mention the word "conspire" in the vicinity of his claim, which could theoretically imply that the private defendant conspired, or acted in concert with, state actors. [doc. # 12, p. 6].  However, as above, "[f]or a private citizen . . . to be held liable under § 1983, 'the plaintiff must allege and prove that the citizen conspired with or acted in concert with state actors.'"  *Lavergne*, 583 F. App'x at 368 (quoting *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir.

1989)).  "A plaintiff satisfies this burden by alleging and proving '(1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights. Allegations that are merely conclusory, without reference to specific facts, will not suffice.'" *Id.* (quoting *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004)).

Here, Plaintiff's allegation of a conspiracy is entirely conclusory.  As this defendant did not act under color of state law, Plaintiff's claim against it should be dismissed as frivolous and for failure to state a claim on which relief can be granted.

**11. Conclusory Claims**

Plaintiff claims, without elaborating: "I'm being retaliated on because of my Civil suit." [doc. # 7, p. 1].  Plaintiff does not identify the civil suit he references,[25] and he does not identify a responsible defendant.

Plaintiff claims that, on April 4, 2019, an unidentified "officer for the animal shelter" lured him out of his house and to the street so that other officers—the "Jump Out Boys Unit"—could arrest him.  [doc. # 12, p. 1].  Plaintiff alleges that luring him to the street was an "illegal procedure."  *Id.*  Plaintiff does not, however, explain why the alleged procedure was illegal or how the procedure violated his constitutional rights.

Plaintiff claims further:

> Another example of retaliation is the covering up of many federal violations of my Constitutional Rights.  Ever since I made it clear in both courts that I was arrested illegally and framed, and that I will be pursuing all Civil actions against all parties I have been treated unfairly.  Even the Internal Affairs sent a letter that I was wrong for filing these actions against these officers after I provided proof that it's not a warrant for Dec. 9, 2016 or June 21, 2018.  They are all working together in a conspiracy to cover up a crime. All of them.  If they would've been abiding by the law without malice this incident would've never occurred.

---

[25] Presumably, he references this civil proceeding.

[doc. # 12, p. 5].  Plaintiff, however, does not identify a specific "federal violation," specify how he was treated unfairly, or identify a responsible defendant(s).

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Ashcroft*, 556 U.S. at 662.

Here, even construed liberally and in Plaintiff's favor, these claims are vague and conclusory.  He does not disclose enough pertinent facts to state plausible claims.  The Court should dismiss these claims.

## 12. *Heck v. Humphrey* Concerning Plaintiff's April 4, 2019 Arrest

Plaintiff claims that, on April 3, 2019, Defendant Belanger fabricated an affidavit and submitted it to obtain a warrant to search Plaintiff's residence.  [doc. # 12, p. 1].  Plaintiff alleges that Belanger lied in the affidavit when he stated that an unknown female emerged from Plaintiff's home and sold a controlled substance to a confidential informant.  *Id.*

As noted, Plaintiff was subsequently charged with possession with intent to distribute a schedule 1 CDS and possession of a schedule IV CDS.  [doc. #s 12, p. 4; 12-1, p. 28].  A jury found Plaintiff guilty.  [doc. # 13, p. 3].

Again, under *Heck v. Humphrey*, 512 U.S. 477 (1994), a successful civil rights action that would necessarily imply the invalidity of a plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.

Here, prevailing on this claim—that the search of Plaintiff's residence was unconstitutional because Belanger lied in the affidavit in support of the application for a search warrant—would necessarily imply the invalidity of Plaintiff's conviction.  Plaintiff's unlawful search claim is predicated on the absence of probable cause for the search and, therefore, constitutes a collateral attack on the conviction because the conviction is a product of the evidence derived from the search.  See *Hall*, 48 F. App'x at 481 ("Hall's claims regarding his allegedly illegal arrest and illegal search and seizure, if successful, would undermine the validity of his felony drug conviction."); *Cornett v. Longois*, 275 F.3d 42 (5th Cir. 2001) ("Moreover, the true nature of the claim appears to be that the officers' illegal search of his home violated his First and Fourth Amendment rights. . . . [B]ecause the claim would implicate the validity of his criminal conviction if successful, it is barred by *Heck v. Humphrey* . . . ."); *Cougle v. Cty. of DeSoto, Miss.*, 303 F. App'x 164, 165 (5th Cir. 2008) ("The district court correctly recognized that the allegations of unlawful search and arrest in this case, if true, would necessarily imply the invalidity of the revocation of Cougle's probation, which was based, at least in part, on the same search and arrest.").

Thus, Plaintiff may not seek damages for the alleged unlawful search until his conviction is reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.  The Court should dismiss this claim.

**13. Judge Erin Garret**

Plaintiff claims that, with respect to his April 4, 2019 arrest, Judge Garret: (1) signed a warrant to search his residence despite knowing that the officer's warrant affidavit/application contained lies; (2) illegally revoked his bond; (3) scheduled a trial for the "incident of April 4, 2019" before the trial for "the incident of June 21, 2018"; (4) threatened him, had "3 different

outbursts of anger," and found him in contempt for referencing his civil suit and violations of his

civil rights; and (5) failed to grant a mistrial or empanel a new jury after one juror "had a loud

outburst of frustration and anger."   [doc. #s 12, p. 1; 13, pp. 1-3].

Plaintiff does not, however, allege that Judge Garret's actions were non-judicial in nature

or were taken in the complete absence of all jurisdiction.  Signing warrants,[26] granting or

revoking bond,[27] scheduling trials,[28] managing or presiding over court proceedings,[29] and ruling

on motions[30] are all acts normally performed by a judge.

Moreover, Plaintiff does not allege that Judge Garret acted outside of the courtroom or

chambers.  Likewise, Plaintiff's claims clearly "center around" a prior proceeding before Judge

Garret, and nothing indicates that the alleged acts arose outside of a visit to Judge Garret in

Garret's official capacity.  Moreover, Plaintiff does not allege that Judge Garret acted in the

absence of all jurisdiction.

---

[26] See *Barnes*, 79 F. App'x at 701; *Hey*, 161 F.3d at 7.

[27] See *Barnes*, 79 F. App'x at 701 (finding that absolute immunity cloaked a judge who set the plaintiff's bond); *Herring v. Mayfield*, 51 F.3d 1043, 1995 WL 153026, at *1 (5th Cir. 1995) ("[S]etting the amount of the bond . . . is within the scope of [the judge's] jurisdiction, thus affording her absolute judicial immunity.").

[28] See *Perry v. Dallas Sheriff's Dep't,* 2014 WL 6809192, at *5 (N.D. Tex. Dec. 3, 2014) (finding a judge immune where the plaintiff alleged that judge erred in scheduling proceedings).

[29] See *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 674 (5th Cir. 2015) (finding a judge immune where the plaintiff alleged that, during a contempt hearing, the judge threatened to arrest him); *Morrison*, 704 F. App'x at 374 ("[H]olding contempt hearings is a normal judicial function.").

[30] See *Broadway v. Sinex*, 166 F.3d 339 (5th Cir. 1998) ("Broadway's suit against the state-court judges involves the judges' rulings while presiding over the case which was properly before them, for which the judges are absolutely immune from civil suit.").

Plaintiff's blanket allegations and assertions of error do not allege any fact that would show that Judge Garret's actions were taken outside of Garret's judicial capacity.  See *Brown v. Dove*, 519 F. App'x 237, 237-38 (5th Cir. 2013).  Even construing Plaintiff's allegations liberally in his favor, any possible wrongdoing by Judge Garret was strictly limited to acts performed in Judge Garret's judicial capacity.[31]  See *Green v. Mallia*, 400 F. App'x 816, 818 (5th Cir. 2010).

Accordingly, Judge Garret is entitled to absolute judicial immunity.  The Court should dismiss these claims.

**14. Perjury**

Plaintiff claims that Officer Belanger committed perjury during trial when he testified that Plaintiff told him that "the judge was going to jail for signing this warrant."  [doc. # 13, p. 1].   Belanger also committed perjury, according to Plaintiff, when he testified that he possessed a warrant for Plaintiff's arrest on June 21, 2018.  *Id.*

"Police officers are absolutely immune from liability for their allegedly perjurious testimony."  *Propes v. Wolf*, 178 F. App'x 388, 389 (5th Cir. 2006); see *Brown v. Jones*, 24 F.3d 238 (5th Cir. 1994).  Thus, the Court should dismiss these claims.

**15. Public Defender Richard Fischer**

Plaintiff claims that his public defender, Richard Fischer, failed to "submit" a video depicting Belanger's alleged use of excessive force, refused to raise certain arguments in state court (i.e. that there was "no warrant in the June 21, 2018 incident," that Plaintiff "had no drugs"

---

[31] That Plaintiff (at times) characterizes Judge Garret's actions as retaliatory does not strip Judge Garret of immunity.  For instance, in *Johnson v. Kegans*, 870 F.2d 992, 994 (5th Cir. 1989), the plaintiff alleged that two judges filed letters, in which they sought denial of plaintiff's parole, in retaliation for plaintiff's civil rights suits against one of the judges.  Even though the plaintiff claimed that the judges' actions were retaliatory, the court concluded (without addressing the traditional elements of a retaliation claim) that the judges were absolutely immune.

in his home, and that an officer lured Plaintiff out of his house so other officers could arrest him),

refused to call Plaintiff's proposed witness, and, overall, rendered ineffective assistance.  [doc. #

13, pp. 2-3].

To state a claim under Section 1983, a plaintiff must allege that a defendant acted "under

color" of state law.  42 U.S.C. § 1983.  "Anyone whose conduct is 'fairly attributable to the

state' can be sued as a state actor under § 1983."  *Filarsky v. Delia*, 566 U.S. 377, 383 (2012)

(quoting  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  "Fair attribution" means: (1)

"the deprivation must be caused by the exercise of some right or privilege created by the State or

by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and

(2) "the party charged with the deprivation must be a person who may fairly be said to be a state

actor."  *Lugar*, 457 U.S. at 937.  Of import, "a public defender does not act under color of state

law when performing a lawyer's traditional functions as counsel to a defendant in a criminal

proceeding."  *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981).

Here, Defendant Fischer did not act under color of state law: deciding what evidence to

introduce, which arguments to raise, and which witnesses to call are, manifestly, traditional

functions of counsel.  See *Ellison v. De La Rosa*, 685 F.2d 959, 960 (5th Cir. 1982) (finding,

where the plaintiff alleged that his counsel was ineffective "for allowing two fundamentally

defective indictments to be prosecuted against him," that counsel was performing a lawyer's

traditional function); *Amir-Sharif v. Dallas Cty. Pub. Defs. Office*, 233 F. App'x 364, 365 (5th

Cir. 2007) (finding, where a plaintiff was concerned with the "quality of legal assistance being

provided to him by appointed counsel and the public defender[,]" that "the attorney defendants . .

. are not state actors for § 1983 purposes."); *Linn v. Saitin*, 575 F. App'x 531, 532 (5th Cir. 2014)

(affirming, where the plaintiff alleged that a public defender and her supervisor rendered ineffective assistance, that the defendants were not state actors).[32]

Plaintiff does allege that Fischer is "guilty of working with the prosecution from day one" and is helping Assistant District Attorney Owen and "the police officers" cover up their crimes. [doc. # 13, pp. 2-3]. Plaintiff derives these allegations from an alleged argument between Fisher and Assistant District Attorney Owen, during which Owen "snatche[d] papers" from Fischer and Fischer responded, "I'm sorry." *Id.* at 2. Plaintiff suggests that, because Fischer apologized, the pair must be "working together." *Id.*

Plaintiff's allegation of a conspiracy is, however, insufficient to classify Fischer as a state actor. That Fischer apologized to Owen in court does not plausibly reflect an agreement or concerted action to commit an illegal act. See *Linn*, 575 F. App'x at 532 (rejecting the plaintiff's argument that his counsel acted in concert with the prosecution because the plaintiff "made only generalized allegations of concerted action, which [was] insufficient to establish the existence of a conspiracy."); *Russell v. Millsap*, 781 F.2d 381, 383 (5th Cir. 1985) (a plaintiff's "mere characterization" of a defendant's conduct "as conspiratorial or unlawful [does] not set out allegations upon which relief can be granted."); *Miller v. Graham*, 447 F. App'x 549, 551 (5th

---

[32] See also *O'Brien v. Colbath*, 465 F.2d 358 (5th Cir. 1972) (holding that the ineffective assistance of a public defender in a criminal case does not raise a claim cognizable under Section 1983 because no "state action" is involved and because Section 1983 was not intended as a "vehicle for prosecuting malpractice suits against court-appointed attorneys."); *U.S. ex rel. Simmons v. Zibilich*, 542 F.2d 259, 261 (5th Cir. 1976) ("The court-appointed attorney, like any retained counsel, serves his client. He represents the client, not the state. The ancillary facts that the court has a hand in providing counsel, and that the attorney selection board in Orleans Parish obtains its authority from statute, do not alter the attorney-client relationship. That relationship is our concern here. Accordingly, the district court correctly disallowed any [Section] 1983 claim raised by Plaintiff-Appellant, since the situation presents no state action.").

Cir. 2011) ("Miller has presented no specific facts showing an agreement between the private defendants and any state actor in this case.").

Assuming, for the sake of argument, that Fischer acted under color of state law, the undersigned would recommend dismissing Plaintiff's claim under *Heck v. Humphrey*. See *Williams v. Eastland*, 54 F. App'x 795 (5th Cir. 2002) ("Because Williams' claims are based on his attorney's alleged ineffective assistance, they are barred by *Heck* because he has not shown that his conviction has been reversed, expunged, invalidated, or otherwise called into question."); *Lawson v. Speetjens*, 42 F.3d 642 (5th Cir. 1994) ("Lawson specifically alleged that public defender Fortner and state prosecutor Speetjens worked together to help convict Lawson. Nevertheless, the claim of conspiracy falls within the ambit of *Heck*, and as such, we affirm the district court's dismissal of the claim, although we do so on different grounds.").

The Court should dismiss these claims.

## 16. Shreveport Police Department

Plaintiff names Shreveport Police Department as a defendant.  Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."  Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership."  LA. CIV. CODE art. 24.

Here, Shreveport Police Department does not qualify as a juridical person.  See *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued . . . .").  Accordingly, the Court should dismiss Plaintiff's claims against Shreveport Police Department.

## <u>Recommendation</u>

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Cameron Kemp's claims against Judge R. Lee Irvin, Judge Erin Garret, Assistant District Attorney Ross Owen, and Prosecutor Monique Davis, as well as Plaintiff's claim that Officer Belanger committed perjury, be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state claims on which relief may be granted, and for seeking monetary relief against defendants immune from such relief.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims relating to his charge for possession with the intent to distribute a schedule 1 CDS, which arise from his June 21, 2018 arrest, be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with his claims, he must, within **thirty (30) days** of the date the criminal proceedings against him have concluded, file a motion to lift the stay;

> b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;

> c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if he so chooses) in this action until the state court proceedings conclude; and

> d. Defendants shall not be required to answer these particular claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claim against Officer Belanger, relating to the conviction arising from Plaintiff's April 3, 2019 arrest, be **DISMISSED WITH PREJUDICE** as frivolous until the *Heck* conditions are met.

**IT IS FURTHER RECOMMENDED** that, with the exception of Plaintiff's excessive force claim against Officer Belanger, Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 15th day of October, 2019.

 

 

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE