UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CAMERON KEMP #72818/185628       CASE NO.  5:19-CV-00799 SEC P

VERSUS       JUDGE ELIZABETH E. FOOTE

DONALD BELANGER JR ET AL       MAGISTRATE JUDGE KAREN L. HAYES

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), are two motions for summary judgment, one filed by plaintiff [doc. # 27] and one filed by defendant [doc. # 37]. Both motions are ripe. For reasons that follow it is recommended that plaintiff's motion be DENIED and that defendant's motion be GRANTED.

## Background

Plaintiff Cameron Kemp, proceeding pro se, filed the instant proceeding on June 21, 2019, alleging various claims under 42 U.S.C. § 1983. The court has dismissed all his claims, except for his excessive force claim against Donald Belanger. [*See* docs. # 15, 33].

The excessive force claim arises from Kemp's arrest on April 4, 2019. That day, the Caddo/Shreveport Narcotics Task Force and the Shreveport Police Department's Special Response Team ("SPD Special Response Team") executed a narcotic search warrant at Kemp's residence. Belanger obtained probable cause for the warrant by conducting two controlled buys of narcotics from the residence.[1] Because several large pit bulls were observed on Kemp's property, the police, with the assistance of animal control, formulated a plan to lure Kemp out of his house under the guise of an animal complaint.

---

[1] Kemp's brief argues the warrant was improperly obtained. However, that claim is not at issue here.

After animal control arrived, Kemp followed them out to their vehicle. The parties dispute what happened next.

Kemp claims he peacefully surrendered and was slammed against the concrete by Belanger. [doc. # 40, p.11]. He claims his injuries include bruised ribs, a bruised and scarred elbow that was bleeding profusely, arm damage with a loss of strength, trouble breathing, and residual pain in his upper and lower back. [doc. #'s 39, 40]. His summary judgment evidence includes his pleadings and a video of the incident.

Belanger presents a different story. In support of his claims, he provides his own affidavit, the affidavit of a witness officer, and Kemp's medical records. He says that as he handcuffed Kemp, Kemp became irate and belligerent as he requested to see a warrant. (Belanger Aff. ¶¶ 7-8). Belanger informed Kemp he would show him the warrant once the house was cleared for safety. *Id*. Kemp continued to pull away from Belanger as Belanger attempted to escort Kemp into the street. *Id*. at ¶ 9. Agent Belanger instructed Kemp to sit down three separate times, but Kemp refused. *Id*. at ¶ 10. As Kemp continued to act aggressively and pull away from Agent Belanger's grasp, Agent Belanger swept Kemp's legs and took him to the ground, slowing his descent to prevent injury. *Id*. at ¶ 11. Belanger says Kemp suffered no injuries. *Id*. at ¶ 17.

Sergeant Dean Willis also provided an affidavit. Therein, he states he observed the incident between Kemp and Belanger. (Willis Aff. ¶ 2). Willis says Kemp was pulling away from Belanger, and Belanger told Kemp to sit on the ground three times. *Id*. at ¶ 3. Willis says Belanger took Kemp to the ground in the manner taught at the Shreveport Police Academy. *Id*. at ¶ 4. Willis says the force used was necessary to safely detain Kemp. *Id*. at ¶ 5.

The medical records establish that Kemp went to the hospital because he complained of right rib pain following the incident. (Ochsner LSU Health Excerpts, p. 4). After an examination,

the doctor diagnosed Kemp with rib pain and prescribed ibuprofen. *Id.* at 10-12. No bruising or crepitus was found and the chest x-ray was unremarkable for acute cardiopulmonary abnormality. *Id.* at 6. There is no documentation of an elbow injury, rib bruises, an arm injury, or back pain.

During a search of Plaintiff's home, police found 118 grams of marijuana in two plastic bags, one box of plastic bags, one digital scale, and eight dosage units of Xanax. After Kemp was arrested and *Mirandized*, he continued to verbally abuse officers, claiming that they, and the judge who signed the warrant, were "going to jail." Kemp also demanded his handcuffs be removed so he could fight the officers at the scene.  [doc. # 37-3, p. 14].

Following his arrest, Plaintiff was charged with intent to distribute and possession of schedule IV CDS, and he was convicted on both charges following a jury trial.

## Law and Analysis

### 1. Summary judgment standard

Federal Rule of Civil Procedure 56(a) mandates summary judgment "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 25011 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* at 248.

### 2. Qualified Immunity

The qualified immunity doctrine often protects public officials from liability in Section 1983 actions brought against a person acting under the color of state law in his individual capacity. "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation." *Ashcroft v. Iqbal*, 556 U.S. 662, 685, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal quotations and citations omitted). In fact, a qualified immunity defense is truly "an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. *See Floyd v. City of Kenner*, 351 Fed. Appx. 890, 893 (5th Cir. 2009). First, the court must determine whether the plaintiff demonstrated a genuine dispute of material fact as to a violation of a constitutional right. *See Pearson*, 555 U.S. at 232, 129 S.Ct. 808. Second, the court must determine whether the constitutional right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*

The right of a person to be free from the use of excessive force during a seizure of his person derives from the Fourth Amendment. *Poole v. City of Shreveport*, 691 F.3d 624. 627 (5th Cir. 2012). This right is a clearly established right for the purposes of a qualified immunity analysis. *Id.* Deciding whether an officer violated this clearly established right such that he is not entitled to qualified immunity protection requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

To overcome Belanger's claim of qualified immunity, Kemp must show (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Poole*, 691 F.3d at 628 (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

Belanger's argument can be summarized as follows:

Qualified immunity applies because Belanger did not use excessive force. He solely performed a leg sweep in the manner he was taught at the Shreveport Police Academy and slowed Plaintiff's descent to the ground. Additionally, Plaintiff's injury is a de minimis injury that does not give rise to a constitutional violation.

[doc. # 37-2, pp. 7-9].

Kemp's motion for summary judgment almost entirely focuses on claims previously dismissed, and judgment in his favor on the basis of any of those arguments should be denied. To the extent his motions, pleadings, and briefs discuss his excessive force claim, his argument can be summarized as follows:

After Kemp peacefully surrendered, Belanger used excessive force to unlawfully slam him into the concrete and cause serious injuries.

[doc. # 40, p. 11].

Kemp's medical records and the videotape are the only other evidence submitted. Because this is a motion for summary judgment, and not a motion to dismiss, the court reviews the medical records and does not accept Kemp's allegations of medical injuries as true. *See, e.g., Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 510 (W.D. La. 2001)(finding that allegations made by the plaintiff were not supported by the medical record); *Reaux v. Sibley*, 2011 WL 2455759, at *5 (M.D. La. May 25, 2011)(granting summary judgment to defendant after finding that plaintiff's allegations of fractured bones and broken nose were not supported by the medical record).

The medical records reveal that Kemp only suffered mild rib pain for which Ibuprofen was recommended. Thus, the medical records contradict Kemp's factual allegations. "[W]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The *Scott* situation requires that a plaintiff's factual claim be untenable based on something else in the record. *Anderson v. McCaleb*, 480 Fed. Appx. 768, 771 (5th Cir. 2012). Although credibility determinations are not appropriate at this stage of litigation, in excessive force cases, summary judgment is proper "where undisputed medical records directly and irrefutably contradict a plaintiff's descriptions of his injuries, [because] no reasonable jury could credit plaintiff's account of the happening." *Rolkiewicz v. City of New York*, 2020 WL 1033792, at \*7 (S.D. N.Y. Mar. 3, 2020).

Here, the medical records contradict Kemp's version of events. The medical records directly and irrefutably make impossible his version of events. They show he only suffered mild rib pain for which ibuprofen was prescribed. They provide no indication that Kemp suffered bruised ribs, a bruised and scarred elbow, arm damage with a loss of strength, or residual pain in his upper and lower back. In addition, Kemp's account is further impugned because he initially complained only about rib pain when he arrived at the hospital, and added the litany of other injuries he now alleges only when he filed suit. The medical records make his factual allegations untenable.

In addition, Kemp's video fails to support his claims. The 26 second long video begins with a dog barking and a black screen, then shows what appears to be people, but the picture is

grainy and the plaintiff cannot be clearly identified. Besides this inconclusive video, Kemp produces no evidence to support his claims.

In the case at hand, considering the blatant contradiction in the record, this Court finds that no reasonable jury could rely on Plaintiff's account, and that the force utilized was reasonable as a matter of law. As a result, Belanger is entitled to qualified immunity.

### Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 37] filed by defendant Donald Belanger be GRANTED and that Kemp's claims be DISMISSED, WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the motion for summary judgment [doc. # 27] filed by plaintiff Cameron Kemp be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS**

**AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 17th day of July 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE